Raymond W. Johnson and Lorraine Johnson, et al. [1] v. Commissioner. Johnson v. Commissioner
Docket Nos. 3706-64, 3707-64, 3746-64.
United States Tax Court
T.C. Memo 1966-31; 1966 Tax Ct. Memo LEXIS 249; 25 T.C.M. (CCH) 198; T.C.M. (RIA) 66031; February 17, 1966
*249 Richard E. Saulque, Plaza Bldg., Sacramento, Calif., for the petitioners in Docket No. 3706-64. William G. Woodworth, for the petitioners in Docket No. 3707-64. Leslie M. Hartman and Lenard S. Zipperian, for the petitioners in Docket No. 3746-64. James E. Merritt, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes in the years and in the amounts as follows: Docket
No.
Year
Deficiency
3706-64
1960
$4,070.27
3707-64
1960
552.05
3746-64
FYE Jan. 31, 1961
380.00
FYE Jan. 31, 1962
1,139.98
FYE Jan. 31, 1963
1,139.98
The cases were consolidated for purposes of trial and the filing of briefs. Petitioners in Docket No. 3706-64 have abandoned an issue raised by the pleadings. The sole issue remaining for decision is whether $19,000 of the sales price paid by Sacramento Business School, Inc., to Raymond W. Johnson and William G. Woodworth should be allocated by both the buyer and the sellers to a covenant not to compete, goodwill, or in part to each. Findings of Fact Some of the facts have been stipulated and as stipulated are so found. *250 Petitioners Raymond W. and Lorraine Johnson filed a joint Federal income tax return for the calendar year 1960 with the district director of internal revenue, San Francisco, California. Petitioners William G. and Catherine B. Woodworth filed a joint Federal income tax return for the calendar year 1960 with the district director of internal revenue, San Francisco, California. Petitioner Sacramento Business School, Inc. (hereinafter sometimes referred to as the buyer), is a California corporation incorporated on October 3, 1960, by James S. Ketchel, Lloyd V. Biggs, and Maurice F. Egan. The buyer filed Federal corporate income tax returns for the period ended January 31, 1961, and the fiscal years ended January 31, 1962, and January 31, 1963, with the district director of internal revenue, San Francisco, California. Systems Data Processing Company (hereinafter sometimes referred to as Systems Data), a partnership in which petitioners Raymond W. Johnson and William G. Woodworth were equal partners, filed a Federal partnership information return for the period February 1, 1960, to December 31, 1960, with the district director of internal revenue, San Francisco, California. In *251 September 1958 Johnson opened the Automation Business School (hereinafter sometimes referred to as Automation) in Sacramento, California. Automation was operated by Johnson as a sole proprietorship. This school gave two separate courses in the use of IBM data processing equipment: a keypunch operators' course for women and a tab operators' course for men. Initially, Automation did not operate under a franchise. However, on December 18, 1958, Johnson, on behalf of Automation, entered into a franchise agreement with Automation Institute of America (also known as A-1 Automation Institute) (hereinafter referred to as Institute) which provided, in part, as follows: AGREEMENT made this 18th day of December 1958, between VERNON D. PATTERSON, doing business as "A-1 AUTOMATION INSTITUTE" of 821 Market Street, San Francisco, California, herein called "Licensor," and AUTOMATION BUSINESS SCHOOL herein called "Licensee." 1. Licensor grants Licensee, and Licensee hereby accepts a license to teach the "A-1 AUTOMATION INSTITUTE" system of instruction herein referred to as said "Course," in the private business school field only, in the City of Sacramento, State of California, herein referred *252 to as the "Licensed Territory," commencing on the 1st day of January 1959, and ending five years from the date of the first class of said course, which said first class of said Course must commence within one year of the date of the commencement of this agreement, unless sooner terminated as hereinafter provided subject to and upon the following terms and conditions. * * *
4. Licensee covenants and agrees that Licensee shall not: A. Teach or offer, during the licensed period, any system of instruction using International Business Machines equipment other than the A-1 AUTOMATION INSTITUTE system of instruction in Licensee's school in the Licensed Territory * * * or teach or offer any course in the A-1 AUTOMATION INSTITUTE system of instruction in any form or manner any place other than in the Licensed Territory unless licensed in writing by Licensor, nor dispose of any of the materials of said Course except to Licensee's employees * * * B. Teach the A-1 AUTOMATION INSTITUTE system of instruction or offer any course therein, or advertise the same directly or indirectly, in any form or manner at any time, anywhere, following the expiration or any sooner termination date of *253 this license. * * *
11. This license is personal and none of the rights and privileges granted hereunder are assignable nor shall they be encumbered by Licensee in any manner. * * *
Johnson did not have a capital investment in the franchise issued by Institute. In February 1960, Johnson and Woodworth formed Systems Data. They were equal partners in the foregoing partnership. Said partnership carried on the business of teaching courses in the operation of tabulating data processing equipment and rendered tabulating services on a contract basis as a service bureau. Johnson continued to operate Automation as a sole proprietorship rendering instruction in keypunch operation. Johnson and Woodworth executed Articles of Co-Partnership on March 23, 1960, which had been prepared by their attorney and which had been discussed by Johnson, Woodworth, and said attorney prior to its execution. Said articles contained the following provision: 11. * * * It is further mutually agreed that the withdrawing partners shall not compete with the partnership business in areas encompassed within two hundred (200) mile radius from the City of Sacramento for a period of five (5) years unless *254 he shall first have the written consent of the partner continuing the partnership business after dissolution. In July 1960, Johnson decided to sell the portion of his business offering instruction courses; viz. Automation and that portion of Systems Data which offered instruction courses (hereinafter collectively referred to as the school). At that time Johnson intended to continue operation of System Data's service bureau. Early in July 1960 Johnson and Ketchel held negotiations covering the sale of Johnson's school. Johnson informed Ketchel that he would sell the school for $24,500. At that time, Ketchel gave Johnson $500 for an option to purchase the school and told Johnson that he would have his attorney draw up an option agreement. On or about July 11, 1960, Johnson and Ketchel executed an option agreement. [2] Said option agreement provided, in part, as follows: THIS AGREEMENT witnesseth that RAYMOND W. JOHNSON, JR. * * * does hereby give and grant to JAMES S. KETCHEL * * * for and in consideration of the sum of $500.00 in cash, * * * the receipt of which is hereby acknowledged, the exclusive privilege and option to purchase that certain business now operated by him in *255 the City of Sacramento, California, known and described as the Automation Business School at 11th and L Building, Sacramento, California, together with all the physical assets thereof, the name, the good will and the franchises from Automation Institute of America, Inc., and together with all first rights of refusal on any and all other franchises now owned by him for and during the period commencing from the date of the execution of this agreement by both of the parties hereto and until and including the 19th day of September, 1960, at 12 o'clock midnight. The price of said property and the business described herein under this option is to be the sum of $24,500.00 and the terms and method of payment are to be agreed upon by and between the parties hereto at such time as the said James S. Ketchel exercises his option to purchase said property. * * * The option agreement executed by Johnson and Ketchel does not mention or refer to Systems Data Processing Company or Woodworth's interest in the school. At about the time the above-mentioned option was executed, Ketchel began negotiating *256 with Institute in order to acquire a franchise for the Sacramento area. As a result of these negotiations, Ketchel, Egan, and Biggs entered into an agreement with N. J. Coffey of Institute on July 16, 1960. This agreement provided that said Institute would issue a franchise to them upon proof that they had purchased Automation. The territory covered by said franchise was specified to be the following counties in California: Yolo, Sacramento, Amador, Alpine, El-Dorado, Nevada, Sutter, Yuba, Sierra, Butte, Glen [Glenn], Tehama, Plumas, Lassen, Shasta, Modoc, Siskiyou, Colusa, Placer On July 15, 1960, Johnson met with Ketchel, Egan, and Biggs in Johnson's Sacramento office. At this time the prospective purchasers advised Johnson to place a value upon the physical assets to be transferred and that he should place as high a value upon such assets as possible because of the tax consequences, i.e., Johnson would receive capital gains treatment upon only the portion of the sales proceeds allocated to the physical assets. By letter dated August 17, 1960, Johnson transmitted to Egan an inventory of physical assets with individual valuations placed thereupon by Johnson which were to *257 be transferred in the proposed sale. Between the last conference in July and September 19, 1960, there transpired several telephone conversations between the parties regarding the sale. On September 19, 1960, Ketchel met with Johnson in the latter's office in Sacramento. Drafts of proposed documents of sale, including a proposed sales agreement, which had been prepared by the purchaser's attorneys were reviewed and discussed by Johnson and Ketchel at this meeting. Johnson did not then wish to sign the documents and later turned them over to his attorney [3] who reviewed them. Johnson's attorney did not redraft the sales agreement, but drew up a supplemental agreement which contained, among other things, a covenant not to compete running against the purchasers for the benefit of the sellers in the operation of their service bureau. On September 19, 1960, Johnson delivered possession of the school to Ketchel who then gave Johnson $10,000 in cash and a promissory note for $14,000. Also, on September 19, 1960, Johnson amended the option agreement to extend the time in which the option could *258 be exercised to October 3, 1960. On October 1, 1960, Johnson's attorney forwarded to Ketchel the sales agreement as originally proposed, the above-mentioned supplemental sales agreement, and the aforesaid promissory note which said attorney had amended. On October 7, 1960, Ketchel, having secured execution of the above-mentioned instruments of sale by the parties interested in Sacramento Business School, sent copies of the agreement of sale and drafts of the bill of sale to Johnson. Johnson received said documents from Ketchel on October 8, 1960. Ketchel sent the executed promissory note to Johnson. Johnson's attorney reviewed and retyped the bill of sale. Johnson then executed the sales agreement, supplemental sales agreement, and the bill of sale. Woodworth also executed the bill of sale. Johnson then set the fully executed bill of sale to Ketchel. The sales agreement executed by Johnson and Ketchel contained the following covenant not to compete: 3. The First Party hereto, in consideration of the provision for the payment of the sum of $19,000.00 by Sacramento College, Inc. unto First Party or his order, as hereinafter provided, hereby covenants and agrees, for himself, *259 for the above named Woodworth, for the above named Systems Data Processing Co., and for their respective heirs, administrators, successors and assigns, that neither First Party, said Woodworth, said Systems Data Processing Co., nor their respective heirs, administrators, successors or assigns, will hereafter, subsequent to September 19, 1960, and prior to September 20, 1965, engage directly or indirectly in any business or endeavor anyplace within the State of California in competition with any of the operations or activities now and/or heretofore conducted by or in the Tab School or Course of Systems Data Processing Co. and/or Automation Business School and/or the Key Punch School or Course of Automation Business School, nor with any operation authorized or contemplated under the existing franchises from Automation Institute of America, Inc., nor will they, or any of them, establish, operate, conduct, be associated with or advise in any manner, within the time and area aforesaid, respecting any business or private school or schools where students can obtain any classical, mathematical, technical, professional, general and/or business education or training, or where students can receive *260 lectures, instructions, education or training in stenography, shorthand, speedwriting, typewriting or in the operations of any machine, equipment, mechanical or other aid in any manner connected with or in furtherance thereof which may relate in any manner to the preparation or trained services of any person in any branch of business or commerce, and/or which may further or enhance the same. Assistance to Sacramento College, Inc. or to Second Party is, of course, excepted from the foregoing. The sales agreement and also the bill of sale purported to transfer the following: 1. Automation, together with the "tab" course operated as part of Systems Data; 2. The goodwill of such schools; 3. The name of Automation Business School; 4. All the trade fixtures, furnishings, furniture, equipment, personal property, and assets used in such school; 5. All leasehold and possessory rights of the sellers in the 11th and L Building, Sacramento, California; 6. All franchises and rights from Institute; and 7. All books, supplies, unexpired contracts, and prepaid and/or unearned tuitions prior to midnight, September 19, 1960. The sales agreement assigned $5,500 of the sales price to *261 "all of the depreciable assets, inventory and supplies itemized in the inventory." Ketchel wished to include a covenant not to compete in the agreement because he knew (1) that Johnson had left his prior employment with Institute in San Francisco and Oakland and established a competing school in Sacramento; (2) that Johnson had been compelled to enter into a franchise agreement with Institute because he was competing with such Institute; and (3) that Johnson and Woodworth would continue to offer data processing services in the Sacramento area. In deciding to pay $24,500 for the business, Ketchel considered the tax consequences to the purchaser resulting from allocation of $19,000 to a covenant not to compete. On September 19, 1960, Sacramento Business School obtained a franchise from Institute. This franchise differed materially from that issued to Automation on December 18, 1958, in that, inter alia, it covered a broader territory. Sacramento Business School has not claimed a capital investment in the foregoing franchise. The franchise formerly issued to Automation by Institute terminated upon the sale by Johnson of Automation and Johnson was released from the provisions contained *262 therein except for the noncompetitive agreement. The franchise rights held by Automation and Johnson were not assigned nor were they assignable to the purchasers. Beginning in September 1960, the purchasers of the school gradually changed the name of that organization to Sacramento Business School, Inc., which process continued for over one year. Under the new owners the courses of instruction were updated by adding courses in the operation of more advanced IBM machines. Additional teachers joined the staff and prior instructors were released. The school curriculum was expanded to comprise a full scale business school offering courses in shorthand, typing, and general secretarial work. The new owners obtained approval from the California State Department of Education entitling Sacramento Business School to issue diplomas. Sacramento Business School claimed in its returns for the periods in question that $19,000 of the purchase price was paid for a covenant not to compete for a five-year period. For the period ended January 31, 1961, and the fiscal years ended January 31, 1962 and 1963, Sacramento Business School claimed deductions for amortization of $19,000 allegedly paid *263 for the covenant not to compete in the amounts of $1,266.67 $3,799.92, and $3,799.92. [4]
Johnson and Woodworth in their respective joint returns for 1960 claimed that none of the sales price was attributable to a covenant not to compete. They claimed long-term capital gains treatment for the excess of the sales price they reported over their reported basis. Respondent has taken conflicting positions. In notices of deficiency sent to both Johnson and Woodworth, respondent claimed that the capital gain from the sale in issue reported by said parties was actually payment for a covenant not to compete and is taxable as ordinary income. Respondent in his notice of deficiency sent to Sacramento Business School disallowed said petitioner's amortization deduction on the $19,000 "because the amount claimed is a capital expenditure." Respondent has stated that he is in the position of a stakeholder and seeks only that the parties treat the $19,000 in issue consistently. Opinion Johnson and Woodworth in a single transaction *264 sold Automation and a portion of Systems Data to the buyer herein for a total consideration of $24,500 in 1960. The agreement of sale specifically allocated $19,000 of the total purchase price to a five-year covenant not to compete from Johnson. No value was allocated to goodwill although it was purportedly transferred by the documents of sale. The sellers contend that their entire gain from the sale is long-term capital gain resulting from the sale of goodwill and other assets and, despite the language of the sales agreement, none of the proceeds are attributable to the covenant not to compete. The buyer has claimed deductions for amortization of the $19,000 it attributes to the covenant not to compete. Respondent is in the position of a stakeholder and contends merely that the disputed sales price should be treated consistently by the buyer and the sellers. The issue for decision is whether $19,000 of the sales price paid for the school was for a covenant not to compete, as claimed by the buyer, or for goodwill or other intangible assets of the business, as claimed by the sellers. The crux of the issue is whether the allocation made by the parties in the sales agreement reflects *265 the substance of the parties' accord, that is to say, whether the written contract of sale faithfully embodies the result of their bargaining. (Jan. 20, 1966). When parties to a transaction such as this one have specifically set out a covenant not to compete in a sales agreement and have given it an assigned value, strong proof must be adduced by the party seeking to overcome that declaration. (C.A. 2, 1959), affirming . The sellers aver that the allocation in the sales agreement of $19,000 of the total purchase price to the covenant was not the product of real bargaining but merely a unilateral decision made by the buyer. Johnson testified that the parties never broached the subject of a restrictive covenant during negotiations prior to the sale. However, the substance of the negotiations is mired in the parties' antithetic testimony. And we are not persuaded by the sellers (1) that the covenant not to compete wasn't discussed by the parties prior to the sale or (2) that the allocation in the sales agreement did not accurately reflect the parties' mutual *266 accord. It is clear (1) that the parties were bargaining at arm's-length for the sale of the business and (2) that the sale in issue was the subject of active negotiations between the parties over a period of three months. Moreover, both parties reviewed the sales agreement containing the allocation of $19,000 to the covenant and had advice as to the terms of the sales agreement from their respective attorneys. [5] We cannot say from the evidence that the sellers were unaware of the consequences of such an allocation. Johnson's attorney who reviewed the sales agreement had ten years of legal experience and had drafted other documents containing covenants not to compete. Under these circumstances, we are persuaded that the parties, upon signing the sales agreement, actually agreed to the allocation. Additionally, the buyer has convinced us that the covenant from Johnson has "an independent basis in fact" and a plausible relationship with business reality. (C.A. 9, 1961), affirming . We believe that the buyer had sound *267 business reasons apart from tax considerations for wanting a covenant not to compete from Johnson and that such a covenant would be of value to it. Ketchel was aware that (1) Johnson had previously left the employ of Institute and begun a competing school in Sacramento and (2) Johnson and Woodworth intended to operate data processing machines in the Sacramento area which put them in a position to compete with the purchaser after the sale. [6]
Although Johnson testified as to the existence of goodwill attaching to the school, such self-serving testimony was vague and insubstantial; and, upon careful examination of the record, we are led to the conclusion that the school's goodwill, if any, was of nominal value. Similarly, we cannot say that the school's leasehold assumed *268 by the purchasers was of any significant value. In view of the foregoing, we conclude that the allocation in the sales agreement of $19,000 to a covenant not to compete was (1) genuine and (2) treated by the parties as a separate and distinct item reflecting their intention to allocate the sales price. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: William G. Woodworth and Catherine B. Woodworth, Docket No. 3707-64; and Sacramento Business School, Inc., Docket No. 3746-64.↩
2. Neither Johnson or his counsel assisted in preparation of the foregoing option agreement.↩
3. This was the same attorney who drew up System Data's Articles of Co-Partnership.↩
4. The buyer claimed on its returns for the periods in question that none of the purchase price was paid for goodwill, leasehold rights, or franchise rights.↩
5. The sellers' attorney reviewed the sales agreement before they signed it.↩
6. Although Johnson was subject to a continuing duty which sprang from his otherwise defunct Automation Institute of America franchise, to refrain from using the A-1 Automation Institute systems of instruction after said franchise's termination, he was not prohibited (except by the covenant given to the buyer) from using his IBM machines for teaching his own system or some other system of computer use and handling.↩